## Case No. 5,172.

### GAGER v. HENRY.

[5 Sawy. 237; 11 Chi. Leg. News, 84.] [1]

Circuit Court, D. Oregon. Aug. 30, 1878.

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission. Syllabus, only in 11 Chi. Leg. News, 84.]

Charles B. Upton, for plaintiff.

E. C. Bronnaugh and Joseph M. Dolph, for defendant.

DEADY, District Judge. This action is brought to recover the possession of the undivided half of fifty-one and eighty-two one hundredths acres of land situate in the northwestern corner of the donation of Joel Perkins and Laura Ann his wife, in Yamhill county. It was tried by the court without the intervention of a jury. There is no conflict in the evidence and the material facts are as follows: That in 1847 Joel Perkins occupied the premises, and prior to 1851 became a married man and a settler thereon under section 4 of the donation act of September 27, 1850 (9 Stat. 497), and prior to 1855 complied with the provisions of said act so as to entitle himself and wife to the grant thereof and died in 1856, intestate, and before the patent issued, leaving a widow, now living, and three children, two of whom, Harriet Jane and Joan Minnette, died in infancy and prior to April 14, 1877, and the commencement of this action; that Dan Hawn Perkins, the remaining one of said children, was born in 1854, and on April 14, 1877, did convey all his interest in the premises to the plaintiff.

This is the plaintiff's case; and upon this state of facts he is, as the successor in interest of said Dan Hawn, the owner of the undivided one half of the premises and entitled to the possession thereof. The settlement being made under section 4 of the donation act, and the settler having died intestate before the patent issued, the case falls within that provision of said section 4, which provides: "In all cases where such married persons have complied with the provisions of this act so as to entitle them to the grant, as above provided * * * and either shall have died before patent issues, the survivor and children or heirs of the deceased, shall be entitled to the share or interest of the deceased in equal proportions." 9 Stat. 497. Under this act upon the death of Perkins, his share of the donation was granted over to his widow and three children in equal parts, and upon the death of Harriet Jane and Joan Minnette, without issue, their interests, under subsection 3 of section 1 of the "Act to regulate the descent of real property," etc. (Laws Or. p. 547), descended to the surviving child, Dan Hawn, and the mother in equal parts, whereby they two became the equal owners of the premises.

But from the evidence introduced by the defendant it appears that on September 7, 1865, one Hank W. Allen, was, by the county court of Yamhill county, duly appointed guardian of the three minor children aforesaid, and then and there duly qualified as such; that on December 4, 1865, said guardian filed a petition, duly verified, in said county court, setting forth therein that his wards' estate consisted wholly of real property worth about eight thousand dollars, and that it was incumbered with a debt of eight hundred dollars, which the income of the property was insufficient to pay after supporting said wards, and praying for a license to sell enough of said real property to pay said indebtedness; that upon the filing of said petition said county court made an order fixing the hearing of the same on January 5, 1866, and directing notice thereof to be given to the next of kin, and others interested, and that said notice be published in the Oregon Statesman for four successive weeks, that said notice was duly published in said paper "for three consecutive weeks, to wit, from the week commencing December 18, 1865, to the week ending January 1, 1866;" that on January 5, 1866, said county court made an order licensing said guardian to sell in the manner provided by law certain portions of the real estate of said wards not exceeding one thousand dollars in value, to pay the debts aforesaid, including a portion in the north-west corner of said donation not to exceed one hundred and forty acres which portion includes the premises in controversy, and which order recites that the notice aforesaid to the next of kin and others interested had been duly published in the Oregon Statesman "for three successive weeks, ending January 1, 1866;" and that no one objected or appeared to show cause why said license should not be granted; that said guardian published due notice that said property would be sold "at public auction" on February 6,

1866, between the hours of 9 a. m. and 4 p. m., at the court-house door in Lafayette, in the Oregon Statesman aforesaid, a paper of general circulation in Yamhill county, for four consecutive weeks, to wit, from the week commencing January 8, 1866, to the week ending February 5, 1866, and before fixing the time and place of such sale, gave the bond and took the oath required by law from guardians licensed to sell the real property of their wards; that afterwards, on April 4, 1866, said guardian reported to said county court that on February 4, 1866, after giving legal notice of such sale by posting written notices thereof in four public places in Yamhill county, Oregon, four weeks prior thereto, and by publishing a similar notice in the Oregon Statesman of the time and place of sale as aforesaid, he offered the premises for sale at the court-house aforesaid, and there being no bids therefor did, by proclamation, then and there publicly postpone said sale until March 6, 1866, between the hours aforesaid, and that on the day last aforesaid, at the court-house aforesaid, he again offered the interests of his wards in the premises, the same being the undivided three fourths thereof, for sale at public auction, and then and there sold the same to the defendant for four dollars and seventy-five cents per acre, that being the highest and best bid therefor, and prayed that said sale be confirmed, whereupon said court made an order continuing said matter until its next regular term; that afterwards, on May 10, 1866, said county court on consideration of said report found that said guardian had given due and legal notice of the time and place of the sale of said premises "by publication and written posted notices as required by law," and sold them at public auction accordingly, at the court-house aforesaid in the county aforesaid to the defendant, he being the highest and best bidder for the sum of four dollars and seventy-five cents per acre, that being the fair value of the same, and thereupon ordered that said sale be confirmed, and that said guardian upon the payment of the sum bid in gold coin, convey to the defendant all the interest of his said wards in the premises, by metes and bounds, as therein described, which was duly done upon the day last aforesaid.

Upon these facts the defendant claims to have acquired the interests of the children of Joel Perkins, deceased, before the death of Harriet Jane and Joan Minnette, aforesaid, in the premises, and to be the owner of the same. On the contrary, the plaintiff insists that the proceedings in the guardian's sale are invalid, and therefore nothing passed by his deed to the defendant.

The objections made to the proceedings are: (1) The order setting the petition down for hearing does not find that the sale was "necessary;" (2) said order does not require any one to appear and "show cause why a license should not be granted;" (3) neither the petition, the said order, nor the citation contain any description of the premises; (4) there was no sufficient service of the citation by publication; and (5) there was no notice given of the time and place of sale.

In considering these objections it must be borne in mind that according to section 1 of article 7 of the Oregon constitution, as construed by the supreme court of the state in Tustin v. Gaunt, 4 Or. 306, the county court of Yamhill county, when exercising this jurisdiction over the lands of these minors, was a court of general jurisdiction, and therefore its proceedings and judgments are to be considered in the light of the rule that prevails in such cases—the jurisdiction is presumed until the contrary appears; and that where the record is silent, that which ought to have been done is presumed to have been done, and rightly done. Neff v. Pennoyer [Case No. 10,083]; Gray v. Larrimore [Id. 5,721]; Grignon's Lessee v. Astor, 2 How. [43 U. S.] 341.

The first of these objections is based upon the fact that the statute (Laws Or. p. 739, § 7), provides in effect that if it shall appear to the court from the petition of the guardian for license to sell the real estate of the ward, "that it is necessary, or would be beneficial to the ward," that the property or some part of it should be sold, it shall make the order for the next of kin, or those interested in the estate, to appear and show cause why the prayer of the petition should not be granted, and upon the assumption that the court must not only have found that the sale was necessary, but that such finding must be stated in the order. Now, it is an elementary rule that the judgment of a court of general jurisdiction need not state that the facts or conclusions of fact upon which it is founded or authorized. Grignon's Lessee v. Astor, supra. This it is which primarily distinguishes it from the judgment of a court of inferior jurisdiction. That which is necessary to the judgment of such a court is presumed to have been shown to it, and found or determined by it. Civ. Code Or. § 726.

But it is to be observed that the statute does not absolutely require that it should appear to the court that the sale was necessary, it is sufficient if it appears that it would be beneficial. No question is made but what the petition is sufficient. It states the character and value of the wards' estate, and the amount of the indebtedness thereon, and that the income thereof is not sufficient to pay such indebtedness and maintain the wards. This makes a case of apparent necessity, and the court in making the order found, and stated therein, that it was "proper and reasonable" that the petition should be heard. Of course, it was not proper that the petition should be heard, unless it appeared therefrom, either that it was "necessary" or "beneficial" to the wards, that the prayer thereof should be granted.

It is also objected that the order is insufficient, because it does not require any one to

appear and show cause why the license should not be granted. It is true that the order does not contain such a direction in so many words, but it does require that notice be given to the next of kin, and all others interested, to appear at a proper time and place, when and where said petition will be heard and determined. This, we think, is the substantial equivalent of the language of the statute (section 7, supra), "to show cause why a license should not be granted," etc. The only purpose of the statute is to provide for giving notice of the time and place of the hearing of the petition to those most likely to be interested in the welfare of the minors, so that, if need be, the petition may be contested by them. But the court can not compel any one to show cause against the petition, or say aught against its allowance. When it has directed notice to be given to the proper persons of the hearing of the petition, the statute is substantially complied with, although such direction and notice should not require them, in so many words, to show cause thereon. Indeed, it seems too plain for argument, that when the next of kin, and others interested, are duly notified to appear at the hearing upon a petition by a guardian to sell a minor's land, that such persons are thereby in effect required, notified, to appear and show cause, if need be, why the petition should not be granted.

The order is sufficient. As to the third objection: The statute (Laws Or. p. 739, § 6) provides that the petition for a sale by guardian shall set "forth the condition of the estate of his ward, and the facts and circumstances under which it is founded, tending to show the necessity or expediency of such a sale." Section 1 of the statute (Laws Or. p. 738) authorizes the sale of the ward's "real estate," whenever his income is insufficient to maintain him. Section 6, supra, authorizes the guardian to file a petition to obtain a license for such sale; that is, the real estate of the ward, the whole of it, if need be. Doubtless the petition may ask for the sale of a specific portion of the estate, and in such case the order of sale should not go beyond such portion. But there is nothing in the statute, or the nature of the case, that requires the guardian to petition for the sale of any specific portion of the real property. Except by a sale ordinarily it cannot be known what quantity of the estate must be disposed of to meet the particular exigency. Upon the hearing of the petition the court will ascertain whether it is necessary or expedient to sell the whole of the property, or only a portion of it, and order accordingly.

The fourth objection is based upon the fact that the order for a hearing upon the petition directs the notice to the next of kin and others to be published "for four successive weeks," while the proof of publication only shows that it was published three weeks. This, at least, is a serious irregu-

larity; and if the jurisdiction of the court did not attach upon the filing of the petition, but until due service of the prescribed notice of the time and place of the hearing on the petition, the subsequent proceeding would be probably void. The county court being one of general jurisdiction, its authority to license and confirm this sale will be presumed unless the contrary appears. But in this case the contrary does appear, for it is shown by the record that the notice was not duly served, and therefore, so far as it depends upon this fact, it affirmatively appears that the court did not acquire jurisdiction. But the better opinion seems to be that the proceeding by a guardian to obtain a license to sell his ward's land is not one between adverse parties, and of which the court does not acquire jurisdiction until due service is made of the notice of the application, but rather a proceeding in the nature of one in rem carried on by and in the interest of the ward through his legal representative—the guardian. Mason v. Wait, 4 Scam. 133; Fitzgibbon v. Lake, 29 Ill. 177; Fitch v. Miller, 20 Cal. 381.

In Fitzgibbon v. Lake, supra, the court, in considering the question of what gives jurisdiction in such a case, cites with approval the following from Young v. Lorain, 11 Ill. 637: "They all agree that enough must appear in the application or the order, or at least somewhere on the face of the proceedings, to call upon the court to proceed to act; and all agree that when that does appear, then the court has properly acquired jurisdiction, or, in other words, is properly set to work."

Now, upon the filing of the petition by Allen—it being a sufficient one—the county court was called upon to proceed to act, to make an order prescribing what and how notice should be given to the next of kin and others. In Fitch v. Miller, supra, the court say: "In order to render the sale (a guardian's) effectual to confer a valid title, the probate court must have acquired jurisdiction of the case by the presentation of a proper petition by the guardian."

It follows, that when the county court of Yamhill county made the order directing the publication of the notice to the next of kin and others, and afterwards heard the petition upon a publication of such notice for a shorter time, it had acquired jurisdiction by the presentation of a proper petition—and this fact itself would be presumed in the absence of anything to the contrary—and therefore its judgment cannot be questioned collaterally on account of any errors it may have committed in the course of its subsequent proceedings. And for the same reason, the first three objections already otherwise disposed of cannot be made in this manner.

Besides, so far as this action is concerned, all the errors or irregularities so far considered are cured by the statute (Laws Or. p.

740, § 20), which provides that when the ward or any person claiming under him shall contest the validity of a guardian's sale "the same shall not be avoided on account of any irregularity in the proceedings; provided it shall appear: (1) That the guardian was licensed to make the sale by a county court of competent jurisdiction; (2) that he gave a bond that was approved by the county judge; (3) that he took the oath prescribed by statute; (4) that he gave notice of the time and place of sale as prescribed by law; and (5) that the premises were sold accordingly at public auction, and are held by one who purchased them in good faith."

This statute was enacted in the territorial times (December 16, 1863) with reference to such proceedings in the probate courts, and appears to assume, as I suppose the fact was, that they were not courts of general jurisdiction, but that the evidence of their jurisdiction and its lawful exercise must appear on the face of their proceedings, and therefore provides that their jurisdiction shall not be questioned collaterally except for some of the errors specified in the aforesaid five particulars. But the constitution of the state having conferred the probate jurisdiction on the county courts and declared them courts of general jurisdiction, their judgments in this respect, without this statute, could not be inquired into collaterally upon any of these grounds except the first—was the court that granted the license for the sale competent to do so?—in other words, had it jurisdiction of the subject? The effect of the statute was to limit the grounds upon which such proceedings in the probate courts could be attacked collaterally while its application to them in the county courts operates to enlarge the scope of such attack. Assuming what was taken for granted upon the argument, that the statute is applicable to the proceedings for the sale of a minor's land in the county court, the result is that the jurisdiction and lawfulness of the proceeding is not unqualifiedly presumed, but it must appear therefrom not only that the license was granted by a court of competent jurisdiction but that in the exercise of that jurisdiction, the matters and things specified in the last four of the particulars aforesaid were had or done. But as to any errors or irregularities in other respects the statute operates as an absolute confirmation of the sale when it declares in effect that the sale shall not be avoided on account of them. Therefore the first four of the plaintiff's objections to the validity of the sale, even if otherwise sufficient, are obviated by the statute. Neither of them come within the category of objections which the statute permits to be made in this action to the validity of the sale. It only remains to consider the fifth and last objection—that there was no notice of the time and place of sale.

This objection as to place is based upon the statute (Civ. Code Or. § 289) which provides that all sales of real property shall take place at the court-house door, and the fact that the notice only states that by virtue of a license from the Yamhill county court, the guardian will sell the premises at the court-house door in Lafayette, without expressly stating in what county. Being established by law, it is a matter of judicial cognizance that there is a county of Yamhill in Oregon, and that the place where its court-house is situated and its courts held is Lafayette. Prima facie, then, a sale made at the court-house door in Lafayette, in Oregon, was made in Yamhill county, Oregon, because there is no other Lafayette in Oregon which contains a court-house or is a county seat. We think the notice of the place of sale sufficient. The report of the sale, showing that the sale was made "accordingly," is still more explicit. It states that the premises were sold at the court-house door in Lafayette in said county, meaning Yamhill.

This objection, as to time, is based upon the fact that the sale was adjourned from February 6 to March 6, 1866, for want of bidders, instead of one week, as directed by statute. Laws Or. p. 739, § 12; Id. p. 329, § 1110; Id. p. 168, § 290. The statute provides that the guardian shall conduct the sale as upon an execution. In making a sale upon execution, the officer entrusted with the process may postpone the sale for want of purchasers or other sufficient cause, "not exceeding one week * * * and so on for like cause, giving notice of every adjournment by public proclamation made at the same time." Page 168, § 290.

In considering this objection, it may be well to premise, that but for the statute (section 20, subs. 4, 5, supra) the irregularity upon which it was predicated would be cured by the confirmation of the sale, and it could not now be used to avoid it. This was a sale upon a decree of a court acting as a court of probate, and proceeding substantially as a court of equity—what is called a "judicial sale," as distinguished from one made by a ministerial officer upon process to enforce the judgment of a court of law. In such a sale, the matter is under the direction of the court and the proceedings are reported to it for its approval. The purchaser is simply a preferred bidder, and the court may accept or refuse his bid. The sale is really made by the court—it is a part of the judicial proceedings in the case—and the decree of confirmation, when the court has acquired jurisdiction, is conclusive of the regularity of the intermediate proceedings. Williamson v. Berry, 8 How. [49 U. S.] 546; Freem. Ex'ns, § 311; Blossom v. Railroad Co., 3 Wall. [70 U. S.] 207. This being the case, this statute limiting the general rule as to the effect of a confirmation of such a sale ought not to be construed with a view of enlarging its operation, but the contrary. Passed originally with a view of sustaining the proceeding for the sale of a minor's land

in a court of inferior jurisdiction, in the mutations of government and tribunals, it has come to be applied to the same proceeding in a court of general jurisdiction, so as to materially modify the presumption in favor of its validity. The question, then, upon which this case must now turn is, was the guardian's sale made upon a notice of the time thereof as prescribed by law? It is admitted that due notice of the time of sale was given originally, but it is denied that the sale was made "accordingly." It is admitted that the guardian had the power to adjourn the sale from week to week for more than four weeks, but it is denied that he could do so at any one time for more than one week. But if a sale made at an adjourned day is nevertheless made upon or in pursuance of the original notice thereof, then this sale was made according thereto—that is, conformably to, and not contrary to such notice. If so, the irregularity of continuing the sale for four weeks by one adjournment rather than by four, does not vitiate the proceeding. We think this sale was made conformably to the original notice. The terms and place of sale were not changed. Such notice was the foundation of the proceedings, and the adjournment by the guardian for good cause prolonged it until the day appointed.

All persons who attended at the place of sale in February were then duly apprized by the public proclamation of the guardian that the sale was postponed until March, and thereby the publicity imparted to the transaction by the original notice, was continued to the time of sale. The time of the sale is primarily fixed by the notice, but may be postponed by the guardian. This power is inherent in his office, and although the statute has prescribed limits to its exercise, we do not think a single postponement for four weeks, rather than four postponements for four weeks, is such an irregularity as makes the sale not according to the notice as to time. In Richards v. Holmes 18 How. [59 U. S.] 147, a trustee was authorized to sell real property on thirty days' notice, published in a certain newspaper. At the time and place designated, the sale was adjourned for want of bidders. The court held the subsequent sale valid, because there was an implied power in the trustee to adjourn the sale, and because the sale, although made without any other than the first publication of the required notice was, "when made, in effect, the sale of which previous public notice was given."

A question was made on the trial as to the sufficiency of the description of the premises in the guardian's deed. But by reference to the survey introduced by the plaintiff, and the calls in the deed for the adjoining premises, we find no difficulty in locating the land.

We think that the defendant has the legal title to the premises, and there must be a finding accordingly.